IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2, 2009 Session

## GERALD JONES v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 05-00734   Lee V. Coffee, Judge

No. W2008-01337-CCA-R3-PC   -   Filed September 30, 2009

Petitioner, Gerald Jones, appeals the post-conviction court's dismissal of his petition for post-conviction relief in which he argued that his guilty plea was unknowing and involuntary and that he received ineffective assistance of counsel.  Petitioner also argues on appeal that the post-conviction court improperly excluded evidence at the post-conviction hearing related to his diminished mental capacity.  We determine that Petitioner has failed to show that he received ineffective assistance or that his guilty plea was entered involuntarily.   Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Michael R. Working, Memphis, Tennessee, for the appellant, Gerald Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General, Tiffani Taylor and Doug Carriker, Assistant District Attorneys General; for the appellee, State of Tennessee.

### OPINION

On March 13, 2007, Petitioner pled guilty in Shelby County to one count of especially aggravated robbery and one count of aggravated burglary.  Pursuant to the plea agreement, Petitioner received a thirteen-and-a-half-year sentence for the especially aggravated robbery conviction, to be served as a violent offender at 100%.  Petitioner received a sentence of 2.7 years for the aggravated burglary conviction, to be served at twenty percent.  The sentence for the aggravated burglary conviction was ordered to be served concurrently to the sentence for the especially aggravated robbery conviction.

At the guilty plea hearing, the State presented a factual basis for the plea. If the case had gone to trial, the facts would have shown that:

[O]n November the 13th, 2003, Mr. Sam Dukes was at his residence when three males entered his home and began beating him with a walking cane and a pipe, a metal pipe.

The males demanded money from Mr. Dukes and ransacked his bedroom. Took several pieces of jewelry and left the scene.

Mr. Dukes recognized [Petitioner], his neighbor, as one of the gentlemen.

Mr. Dukes was transported to the MED in critical condition for a deep laceration to the head. He had broken bones in his right hand, which had rendered his hand not in the same condition that it had been in before. He still has difficulty using it.

He required stitches to his head to close the wound, a plaster cast for his hand.

. . . .

[Appellant] gave a statement of admission to setting this up, but not to actually beating the defendant [sic].

At the conclusion of the lengthy plea hearing, the trial court accepted the guilty pleas. Subsequently, Petitioner filed a petition for post-conviction relief in which he alleged that his trial counsel: (1) failed to investigate and interview witnesses, including the alleged accomplices; (2) gave Petitioner incorrect information about his sentencing range; (3) coerced him into pleading guilty; (4) withheld exculpatory evidence; and (5) allowed Petitioner to plead guilty where there was no factual basis to support the convictions. Further, Petitioner alleged that his guilty plea was unknowing and involuntary. Counsel was appointed to represent Petitioner during the post-conviction proceedings, and an amended petition was filed. In the amended petition, Petitioner included additional allegations of ineffective assistance of counsel. Petitioner claimed that trial counsel: (1) failed to file an IQ test conducted by court-appointed evaluators; (2) failed to disclose that the IQ test was not conducted pursuant to the trial court's prior order; (3) failed to conduct a hearing to determine the knowing and voluntary nature of Petitioner's guilty plea; and (4) failed to adequately communicate with Petitioner.

*Evidence at the Post-conviction Hearing*

At the hearing on the post-conviction petition, the post-conviction court heard testimony from trial counsel, who was appointed to represent Petitioner as part of her job with the Public Defender's Office in Shelby County. According to trial counsel, Petitioner reported that he had a mild learning

disability. In response to Petitioner's claim, trial counsel requested a mental evaluation. The trial court granted her request and a report was completed by Midtown Mental Health. The report indicated that Petitioner was competent to stand trial, understood the nature of the legal process and the charges against him, and could assist his attorney in his defense.

Trial counsel recalled that she met with Petitioner at least four or five times. She also remembered that she sent discovery documents to Petitioner on two separate occasions. Petitioner later claimed at the guilty plea hearing that he was never shown discovery documents. The trial court granted a recess so that Petitioner could review the documents prior to the entry of the plea.

Trial counsel explained that she filed a motion to suppress Petitioner's statements to police on the basis of his low IQ scores from high school that placed Petitioner's IQ somewhere in the range of 60-65. Trial counsel filed this motion despite the fact that she estimated it would be unsuccessful when the trial court learned that Petitioner had not only graduated from high school but had also taken several college courses.

Trial counsel specifically remembered that Petitioner was interested in a guilty plea. He and his family were interested in the most lenient outcome to Petitioner's charges. Trial counsel explained to Petitioner prior to the plea that if he went to trial he was facing a sentence of fifteen to twenty-five years. The State initially came forward with the offer of a sentence of 13.5 years on a Friday. The offer was extended until the following Monday in order to give Petitioner time to talk to his family prior to accepting the offer despite the fact that the offer was given as a "today only" offer.

Trial counsel explained the plea offer to Petitioner. She did not remember Petitioner telling her at any point that he was confused by the plea or did not understand the offer. In fact, trial counsel felt that Petitioner understood the plea and never had any indication that Petitioner had mental problems.

Petitioner testified at the hearing on the post-conviction petition that despite his education, he does not read or write very well. Petitioner explained to the post-conviction court that he received assistance from another inmate in preparing his post-conviction petition.

Petitioner did not recall receiving discovery materials from trial counsel prior to the plea hearing. He did not remember discussing the materials with trial counsel but acknowledged that the discussion took place prior to the entry of the plea.

Petitioner insisted that he was pressured to accept the plea by his trial counsel. He was told it was his best option. He felt that trial counsel was not trustworthy and was not working in his best interest. Petitioner also explained that he felt pressured to accept the guilty plea because of the time limit placed on his ability to accept the offer. Petitioner admitted that he pled guilty in order to receive the sentence of 13.5 years. Further, Petitioner acknowledged that had he not pled guilty, he would have been subjected to a fifteen to twenty-five year sentence. Petitioner also admitted that

he was unaware how he could receive less than his current sentence if the post-conviction court were to grant relief.

Petitioner informed the post-conviction court that he graduated from high school in 1999 and earned mostly B's and C's on his report cards. Petitioner had attended at least one year of college, during which he maintained a "D" average. Petitioner claimed that he was unable to read well but was able to attend college and read a portion of the police report aloud from the stand with little difficulty. At the time of his arrest, Petitioner was working for FedEx.

Three of Petitioner's sisters also testified at the hearing. They all described Petitioner as "retarded" or "slow" with a penchant for trying to please authority figures. Petitioner's sisters also informed the post-conviction court that Petitioner was a follower.

At the conclusion of the hearing, the post-conviction court denied relief and made extensive findings of fact and conclusions of law. Specifically, the post-conviction court found that Petitioner's testimony from the guilty plea hearing and the post-conviction hearing were riddled with inconsistencies. In other words, the post-conviction court found Petitioner's testimony should be afforded little credibility. The post-conviction court specifically noted the great lengths that the trial court went to at the guilty plea hearing to ensure that Petitioner understood the ramifications of the guilty plea. Further, the post-conviction court accredited the testimony of trial counsel concerning her preparation for the case and the assistance she provided to Petitioner in advance of and during plea negotiations.

After the denial of his petition for relief, Petitioner filed a timely notice of appeal. On appeal, Petitioner challenges the dismissal of the petition and argues that the post-conviction court improperly ruled that trial counsel could not submit proof of Petitioner's "substantial lack of understanding of the rights he [wa]s alleged to have waived."

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W .2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S .W.2d at 904.

In the case herein, Petitioner has failed to show that trial counsel was deficient. Moreover, Petitioner has failed to show that but for trial counsel's alleged deficiencies, he would have refused to plead guilty and insisted on going to trial. Trial counsel testified that she met with Petitioner four or five times prior to the plea and provided him with discovery materials twice. Despite her efforts, Petitioner claimed at the guilty plea hearing that he had not seen the discovery materials so the trial court allowed for a recess so that Petitioner could review the documents prior to the entry of the plea. The testimony at the hearing indicated that Petitioner was informed by trial counsel prior to the plea hearing about the charges he was facing and that he was facing a sentence of at least fifteen years if he went to trial. Further, even though trial counsel filed a motion to suppress Petitioner's confession on the basis of Petitioner's diminished mental capacity, trial counsel felt that the motion would not likely be successful. Petitioner also felt that the testimony of one of his sisters indicated that he at all times wanted to forego the plea and go to trial. The transcript of the guilty plea hearing, as noted by the post-conviction court, is in direct opposition to Petitioner's argument. The trial court went to great lengths to discuss the ramifications of the guilt plea with Petitioner in what is undoubtedly one of the most thorough guilty plea colloquys ever encountered by this Court. Petitioner was repeatedly asked by the trial court if he understood the effects of the plea. Finally, Petitioner's frustration with the inability of the State to prosecute the remaining co-defendants has nothing to do with the effectiveness of his trial counsel. The trial court accredited the testimony of trial counsel and discredited Petitioner's testimony. Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. Petitioner is not entitled to relief.

*Exclusion of Evidence of Mental Capacity*

Petitioner also argues that, in addition to receiving ineffective assistance of counsel and entering an unknowing and involuntary plea, that the post-conviction court improperly deemed "irrelevant" a "line of questioning [aimed at] gauging [Petitioner's] understanding of the rights he waived" by pleading guilty.

At the post-conviction hearing, counsel for Petitioner launched into a line of questioning regarding Petitioner's mental capacity. In order to demonstrate Petitioner's level of education and understanding to the post-conviction court, counsel asked Petitioner to read a portion of a waiver of rights that was similar or identical to the form that Petitioner signed at his guilty plea hearing. Counsel then attempted to question Petitioner about the content of the material that he just read. Petitioner stated that he did not know the meaning of some of the words in the waiver. Counsel for the State objected, and the post-conviction court instructed counsel for Petitioner that he could only question Petitioner about his understanding of the terms of the waiver that he signed at the guilty plea.

We have already concluded that the post-conviction court properly determined trial counsel's representation of the petitioner was not ineffective and that the guilty plea was entered voluntarily and knowingly. The introduction of testimony from Petitioner about his understanding of a document other than the guilty plea waiver he actually signed, read aloud at the post-conviction hearing in order to demonstrate his mental acumen would not change that decision. The record amply supports the denial of post-conviction relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____

JERRY L. SMITH, JUDGE